UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| ROBERT PAYNE, | ) | |
|---|---|---|
| d/b/a PAYNES FORKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:13-CV-110-TLS |
| | ) | |
| BUCKET SOLUTIONS, LLC, | ) | |
| a Colorado LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The Plaintiff, Robert Payne, d/b/a Paynes Forks, has sued the Defendant, a Colorado LLC doing business under the registered trade name Bucket Solutions, for "engag[ing] in trademark infringement, palming off, false advertising and false designation of origin by continuing to advertise and sell immitation [sic] Payne Products." (Compl. 1, ECF No. 1.) The Complaint asserts that venue is proper in this Court as the district where the events giving rise to the litigation occurred. The Defendant disagrees with the Plaintiff's statement regarding venue, and has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue.

**COMPLAINT ALLEGATIONS AND ADDITIONAL FACTS**

The Plaintiff, headquartered in LaPorte, Indiana, manufactures and distributes fork lift products that temporarily transform light duty and heavy duty equipment into forklifts. The product, which has generated sales for the Plaintiff in excess of $6 million, bears the PayneForks mark. The Plaintiff first introduced the fork lift product commercially in May 2004. In August 2012, the Plaintiff initiated proceedings with the United States Patent and Trademark Office to

obtain a trademark for the forks, but the trademark has not been finalized.

The Defendant, IAM Mfg., LLC, is a Colorado LLC. It conducts business using the trade name Bucket Solutions, which is registered in the State of Colorado. IAM designs, engineers, and sells universal quick attach clamp-on attachments for tractor and skid steer loader buckets. IAM's only place of business is in Wheat Ridge, Colorado. IAM has two members, both of whom are residents and citizens of Colorado. They are also employees of the company. Neither has attended trade shows in Indiana or otherwise been to Indiana to conduct business for IAM. The only other employee of IAM is a part-time bookkeeper. IAM has no outside sales representatives or distributors, but ships its product to customers who order, primarily, from the internet.

According to the Complaint, the Defendant, with full awareness of the Plaintiff's prior use of the PaynesForks mark, advertises, sells, and alleges to manufacture, distribute and sell the Plaintiff's products through various mediums, including the Defendant's weBucket Solution website and other online marketplaces such as Amazon. The Defendant and the Plaintiff have never executed any agreement authorizing the Defendant to advertise, manufacture, distribute, or sell the Plaintiff's products. In fact, the parties signed a Settlement Agreement and Mutual Release in January 2010, which terminated litigation that the Defendant brought against the Plaintiff in a Colorado court. The Settlement states that neither party will refer to the other's products in any manner or by any medium.

The Plaintiff's federal claims are based on the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) & (b). The Plaintiff alleges that PayneForks is a protected, unregistered trademark pursuant to 15 U.S.C. § 1125(a), and that the Defendant's unauthorized use of the mark guarantees consumer

confusion in the marketplace, both locally and interstate, as well as deception as to source, sponsorship, affiliation, and connection in the minds of the public. The Plaintiff also asserts that the Defendant relies on Payne marks to advertise similar products that entice and lead unsuspecting consumers to falsely believe they are purchasing the Plaintiff's products when, in reality, they are purchasing a good manufactured or distributed by the Defendant. The Plaintiff alleges damages in the form of loss of business reputation and goodwill, and lost sales and profits.

The Plaintiff also advances Indiana state law claims of unfair competition and infringement of the Plaintiff's common law rights in the trademark.

## ANALYSIS

Rule 12(b)(3) allows a party to move to dismiss an action when the action is not filed in a proper venue. Fed. R. Civ. P. 12(b)(3). If a court determines that it is not the proper venue for the action the court must dismiss the action or "if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The plaintiff has the burden of showing that venue is proper. *Grantham v. Challenge–Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969).

The Lanham Act has no special venue provision. *Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995). The federal venue statute provides that where, as here, subject matter jurisdiction is not founded solely on diversity, venue exists in "(1) a judicial district in which any defendant resides, if all defendants reside" in the same State, or "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b). Under 28 U.S.C. § 1391(c), a corporate defendant is deemed to reside "in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question."

The Defendant argues that venue cannot be placed in this district because the Defendant does not reside in Indiana, and a substantial part of the events or actions giving rise to the Plaintiff's claims did not occur in Indiana. Although the Plaintiff alleges in his Complaint that venue is proper in this district because "[t]he events giving rise to [his] claim have arisen within the geographical boundaries of the United States of America, and within the Northern District of Indiana" (Compl. ¶ 5), the Plaintiff backs away from this assertion and, instead, relies on the "effects doctrine" to argue that jurisdiction, and thus venue, is proper (Pl.'s Mem. 4–10, ECF No. 11). Specifically, the Plaintiff argues that, because the Defendant's trademark infringement is an intentional tort, the effects of the infringement support the exercise of specific jurisdiction in this district. Under the effects test, purposeful conduct that is calculated or known to cause injury to a person in the forum can support personal jurisdiction in that forum. *See Calder v. Jones*, 465 U.S. 783, 791 (1984); *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997); *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. P'ship*, 34 F.3d 410, 411–12 (7th Cir. 1994). The Plaintiff contends that by proving that personal jurisdiction exists, he necessarily proves that venue is appropriate.

A. **Personal Jurisdiction Under the Effects Test**

Congress did not create national service of process under the Lanham Act. *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 550 (7th Cir. 2001) (no national service of process

for the Lanham Act). Where federal law does not provide for nationwide service of process, a federal district court has personal jurisdiction over a nonresident defendant if a court of the state in which it sits would have such jurisdiction. *Purdue Research Found. v. SanofiSynthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003). Indiana Trial Rule 4.4(A) is Indiana's "long-arm" statute governing the extent of personal jurisdiction. Indiana Trial Rule 4.4(A) also allows jurisdiction in Indiana "on any basis not inconsistent with the Constitutions of this state or the United States." The relevant analysis, therefore, is whether "the exercise of personal jurisdiction is consistent with the Federal Due Process Clause." *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006).

The federal test for personal jurisdiction under the Due Process Clause of the Fourteenth Amendment authorizes a court to exercise jurisdiction over a nonresident defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe*, 326 U.S. at 319). This "purposeful availment" requirement of the minimum contacts standard ensures that a nonresident defendant "will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations and quotation marks omitted).

In addition, the Supreme Court has distinguished two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16 (1984). The Plaintiff relies on the concept of specific jurisdiction, which applies when the controversy arises out of the defendant's purposefully established contacts with the forum state. *See Helicopteros*, 466 U.S. at 414. One way in which minimum contacts may be established for the purpose of specific jurisdiction is when the defendant causes harm to an individual within the state that is both intentional and aimed at the forum state. *Calder*, 465 at 788–90 (establishing the effects test). In *Calder*, the state in which the victim of defamation lived had jurisdiction over the victim's defamation suit. The defendants in *Calder*, both residents of Florida, were involved in writing an allegedly libelous article for the *National Enquirer* about the plaintiff, a resident of California. *Calder*, 465 U.S. at 784–86. The Court characterized the defendants' actions as "intentional, and allegedly tortious, actions [which] were expressly aimed at California" and were not "mere untargeted negligence." *Id.* at 789. The defendants knew that the article would have an adverse impact upon the plaintiff, the brunt of which would be felt largely in California. *Id.* at 789–90.

In *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010), the Seventh Circuit extracted from *Calder* that the "purposeful direction" requirement for personal jurisdiction in the context of an intentional tort suit requires "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id.* at 703. "If the plaintiff makes these three showings, he has established that the defendant 'purposefully directed' his activity at the forum state." *Felland v. Clifton*, 682 F.3d 665, 675 (7th Cir. 2012).

The Plaintiff has alleged that the Defendant engaged in intentional torts, and that it knew the injury would be suffered by an Indiana resident. These allegations, and the facts supporting the Defendant's knowledge of the Plaintiff's business, bring the suit within the *Calder* formula and satisfy the first and third elements set out in *Tamburo*. However, there must be "something more" than an injury in the forum to support personal jurisdiction: the plaintiff must also establish "tortious conduct *specifically directed* at the forum, making the forum the focal point of the tort." *Tamburo*, 601 F.3d at 706 (emphasis added); *see also Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985) ("We do not believe that the Supreme Court, in *Calder*, was saying that any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff.").

> Rather, the so-called "effects" test is merely another way of assessing the defendant's relevant contacts with the forum State. The defendant must still "purposefully avail [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 105 S. Ct. at 2183 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The forum State cannot hale the defendant into court "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." 105 S. Ct. at 2183. Jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* at 2183–84 (emphasis in original).

*Wallace*, 778 F.2d at 395 (parallel citations omitted). With this understanding, the *Wallace* court focused on the relationship between the defendant's actions and the forum state itself, finding that the defendant did not engage in conduct that created a substantial connection with Indiana. *Id.*

In opposing the Defendant's Motion, the Plaintiff relies on *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997), a case in which the Seventh Circuit took a broader view of *Calder*.

7

Specifically, the Plaintiff cites *Janmark* for the proposition that "the locus of plaintiff's loss of revenue dictates proper jurisdiction, to include venue." (Pl.'s Mem. 9.) In *Janmark*, the court did appear to extend the reach of *Calder* when it focused on the location of the injury, *id.* at 1202 (authorizing jurisdiction in Illinois when California company contacted Illinois company's customers in New Jersey to threaten legal action and persuade New Jersey store to stop buying the Defendant's product), but the Seventh Circuit has been careful to note the limits of *Janmark*. For example, in *Tamburo*, the Seventh Circuit noted that "the holding in *Janmark* ultimately focused on more than the fact that the injury had occurred in Illinois; *Janmark's* jurisdictional conclusion was premised on the Illinois-based injury and the fact that the defendant acted with the purpose of interfering with sales originating in Illinois." *Tamburo*, 601 F.3d at 706. Moreover, shortly after *Tamburo*, the Seventh Circuit crystallized that it "view[ed] *Wallace* as a correct statement of the standard set down by the Supreme Court" in *Calder*, and noted:

> As in *Tamburo*, we do not read *Indianapolis Colts* or *Janmark* to conflict with *Calder*, which made clear that a defendant's intentional tort creates the requisite minimum contacts with a state only when the defendant expressly aims its actions at the state with the knowledge that they would cause harm to the plaintiff there. *Tamburo*, 601 F.3d at 703. One can certainly read *Indianapolis Colts* and *Janmark* to arrive at that conclusion by another road, *see Tamburo*, 601 F.3d at 705–06, but "express aiming" remains the crucial requirement when a plaintiff seeks to establish personal jurisdiction under *Calder*.

*Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 445–46 (7th Cir. 2010).

The Plaintiff does not show that the Defendant expressly directed its actions at Indiana. The Defendant has formed no contracts in Indiana, has no physical presence in Indiana, does not stock its product in Indiana, and has not directly solicited customers in Indiana. The Plaintiff argues that the Defendant's conduct demonstrates its express intent to harm an Indiana resident

8

and his protected mark and business. But knowing infringement of a trademark is not the same as intentionally targeting a forum. *See Nerds on Call, Inc. (IND.) v. Nerds on Call, Inc. (Cal.)*, 598 F. Supp. 2d 913 (S.D. Ind. 2008); *see also Family Watchdog, LLC v. Schweiss*, No. 1:08-CV-642-SEB-DML, 2009 WL 276856, at *4 (S.D. Ind. Feb. 5, 2009) ("In a trademark case, courts are to be wary of conflating a knowing infringement with intentional harm aimed at the forum."). Jurisdiction over a defendant may be proper when the injury to the trademark occurred in Indiana, but the existence of other contacts with the forum must be established. *See Indianapolis Colts*, 34 F.3d at 412 (relying on the fact that the defendant intentionally planned to target Indiana customers by broadcasting its games in Indiana, where "the largest concentration of consumers" were located); *see also Mobile Anesthesiologists*, 623 F.3d at 446 (finding that defendant's continued use of a trademark after actual notice that it belonged to the plaintiff did not satisfy requirement for express aiming because *Calder* requires more than simple knowledge of where the subject of an intentional tort resides). The Defendant has not presented any evidence of such contacts.

"A plaintiff cannot satisfy the *Calder* standard simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website." *Mobile Anesthesiologists*, 623 F.3d at 447. "Courts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *Illinois v. Hemi Group, LLC,* 622 F.3d 754, 760 (7th Cir. 2010). "The difficulty with basing personal jurisdiction on the pure existence of a website, even one by which purchases can be made, is that such a website is not

9

inherently directed at customers within a certain forum, but is instead available to all customers throughout the country who have access to the Internet." *AirFX, LLC v. Braun*, Cause No. 1:11-cv-802-WTL-DKL, 2011 WL 5523521, at *3 (S.D. Ind. Nov. 14, 2011). "If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011); *see also Hy Cite Corp. v. Badbusinessbureau.com, LLC*, 297 F. Supp. 2d 1154, 1166 (W.D. Wis. 2004) (agreeing with the majority of courts that "simply placing the name of a trademark on a website is not enough to show that a defendant has intentionally targeted the forum state").

There is no allegation that the websites at issue intentionally targeted Indiana residents, or that the confusion would occur specifically in Indiana, as opposed to any other state where the Plaintiff's product is sold. *Compare be2 LLC*, 642 F.3d at 559 (noting absence of evidence that defendant deliberately targeted or exploited the forum market where the twenty people who accessed the website and created profiles "may have done so unilaterally by stumbling across the website"), *with Tamburo*, 601 F.3d at 706 (involving allegations that the defendants published false and defamatory statements on public websites that were specifically aimed at the defendant and his business in Illinois when it defamed and tortiously generated a consumer boycott against Tamburo, knowing that he lived and operated his software business in Illinois, and some of the messages specifically listed Tamburo's Illinois address and urged readers to harass him). The Plaintiff has not presented any evidence that the Defendant advertises, promotes, or sells its products to Indiana residents any more than it does to residents of any other state, either through the weBucket Solutions website or through Amazon.com, a colossal, worldwide, online retailer.

The Plaintiff relies exclusively on the fact that it is a resident of Indiana, and manufacturers and distributes its product from Indiana. These facts, although they establish that the harm was felt in Indiana, are purely incidental to whether the Defendant expressly aimed its conduct at Indiana. The Defendant has simply brought about an injury to an interest that is located in a particular state, which is not sufficient to establish a connection between the tortious conduct and the forum state.

B.      **Dismiss or Transfer**

Having established that venue is not proper in this district, the Court must decide the disposition of the Defendant's motion and the case. Federal Rule of Civil Procedure 12(b)(3) allows for the dismissal of a suit for improper venue. As stated earlier, 28 U.S.C. § 1406 requires a district court either to dismiss a case brought in an improper district or, "if it be in the interest of justice," to transfer such a case to "any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Congress enacted § 1406(a) to avoid "the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).

Here, the nature of the action, when combined with the reaches of the internet as a global marketing and sales tool and with the previous Settlement Agreement establishing the Defendant's knowledge of the Plaintiff's mark, rendered the facts upon which venue turned more elusive than might generally be the case. To avoid prejudice that the Plaintiff might incur by dismissal, the Court finds that a transfer of this matter is in the interests of justice.

## CONCLUSION

For the reasons stated above, the Court finds that venue is not proper in this Court, but DENIES the Defendant's Motion to Dismiss for Improper Venue [ECF No. 7], and instead transfers this case to the United States District Court for the District of Colorado.

SO ORDERED on November 6, 2013.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION